PEOPLE *v.* CURRY.

1. CRIMINAL LAW — CONSTITUTION — TRIAL BY JURY — DIRECTING VERDICT.

In a prosecution for a violation of the local-option act, it is an invasion of respondent's constitutional right to a trial by jury for the court to instruct the jury that it is their duty to render a verdict of guilty, and, without permitting them to retire or deliberate, direct the clerk to take the verdict. *People* v. *Doyle,* 160 Mich. 423 (125 N. W. 358.)

2. INTOXICATING LIQUORS — LOCAL-OPTION ACT — FURNISHING LIQUORS.

*Quære:* Does it constitute an unlawful furnishing of liquor, under the local-option law, for several persons in a county where the law is in force to contribute to a fund for the purchase of beer from a county where it may be sold, and to help themselves from the quantity purchased and held in common ?

Exceptions before sentence from Ionia; Davis, J. Submitted June 24, 1910. (Docket No. 141.) Decided November 11, 1910.

John Curry was convicted of violating the local-option law. Reversed.

*John Nichol,* for appellant.

*Dwight C. Sheldon,* Prosecuting Attorney, and *John E. Bird,* Attorney General, for the people.

BLAIR, J. A number of young men of Ionia county, where the local-option law was in force, arranged to obtain a quantity of lager beer from Grand Rapids, where such law was not in force. The arrangement was, according to the undisputed testimony, that each of the parties thereto, including respondent, was to contribute $1 to a fund which was to be used by respondent in purchasing beer, cigars, and sandwiches and paying respondent's expenses. The refreshments, when secured, were to be delivered to

the contributors at the fair grounds in the city of Ionia. In accordance with the arrangement, respondent went to Grand Rapids and purchased a half barrel and a case of beer, which was consigned and shipped to him by express, received by him, and by him caused to be transported to the grand stand at the fair grounds, where any of the contributors to the fund helped himself to as much as he chose and as often as he chose, without reference to the proportion that he had paid for. The record is silent as to whether respondent paid the dollar which he was to pay or whether he drank any of the beer, although he remained at the fair grounds until the next morning and shipped the empty half barrel and bottles to Grand Rapids. The circuit judge directed a verdict of guilty, and from such verdict respondent appeals, on the ground that the court should have directed a verdict of not guilty.

Respondent's counsel takes the position that, since the purchase of the beer was made in a county where such purchase was lawful, and the evidence shows, as he alleges, that the respondent merely acted as the agent of the others in the shipment and delivery of the beer, he was guilty of no offense and was entitled to an instructed verdict. There would be force in this contention if the evidence disclosed that respondent had no interest in the beer and merely purchased with the money furnished to him by individuals and delivered to each of such individuals the amount of beer paid for and belonging to him. *People* v. *Converse,* 157 Mich. 30 (121 N. W. 475). Such was not this transaction. The witness Miller testified:

"Curry was to go down and get the beer.

"*Q.* What was he to get out of it?

"*A.* He wasn't to get nothing out of it. He was to get his expenses. He was to contribute the same as the rest of us, $1. I think we got a rebate for it, 10 cents, something like that. Somebody gave it to me the next day at Lynes'. I am not sure, I got 10 or 15 cents. He figured out the expense of the hack and everything and gave us the rebate. I don't know what the beer cost, nor what

the hack hire was, and I never asked Curry his expenses.
\* \* \*

"*Q.* As I understand it, you boys were to put up $1 apiece and somebody was to go down to Grand Rapids and get some beer ?

"*A.* Yes, sir. It was agreed that whoever went should be paid his expenses. At the time we put up the dollar apiece I didn't expect to get any money back. It was to pay for the picnic and the expenses of the parties who purchased the beer and sandwiches and cigars. That was what the dollar apiece was contributed for. The money was placed in the hands of either Bowersox or Curry. Each man helped himself to the beer he wanted. I don't know whether any beer was left in the keg or whether there wasn't. Each man had what he wanted. I considered it my own beer I was drinking. I didn't purchase any beer from John Curry, nor did he give me any, or furnish me any except as he ordered it from Grand Rapids.

"*Q.* By *Mr. Sheldon:* No attempt whatever at any equitable distribution of this beer, was there ?

"*A.* No, sir."

It is clear, therefore, that, under the agreement, respondent had the same interest in the beer, sandwiches, and cigars that the others had, and the testimony of all of the participants demonstrates that it was not the intention that the beer should be proportionately divided between them, but should be drunk indiscriminately by all, in accordance with their respective thirsts and holding capacity. It is clear that if each of the parties had received individually a certain number of quarts or bottles of beer as his own property, and each had poured such beer into a receptacle to be drunk in common, he would have been guilty of furnishing such beer to the others, in violation of the local-option act. *People* v. *Myers,* 161 Mich. 40 (125 N. W. 701).

It seems equally clear to us that where, as in this case, the beer is undivided and drunk in common, each person is furnishing a portion of the beer paid for by him to others, and that each of the parties to the agreement engaged in drinking the beer in question was guilty of a vio-

lation of the local-option law.   We are also of the opinion that, whether respondent had any pecuniary interest in the beer or not, or whether he drank any of it, he would be equally guilty with the others, if he procured the beer for them to be used as it actually was used.

We feel obliged to reverse this case, however, for the reason that in directing the verdict the court invaded the constitutional rights of respondent.   In his instructions to the jury the court said, among other things:

"*The Court:* I think the way the case stands, gentlemen, it is one for the court to dispose of.   I would much rather submit the matter to the jury if based upon any facts that might warrant the court in submitting it. * * * In the judgment of this court the title and control of that property was in Mr. Curry, and by permitting others to take from what was then, in part at least, his individual property, it has been a violation of the law, and it would be your duty to return a verdict of guilty on all three counts.   Take the verdict, Mr. Clerk.   (Verdict received.)

"*The Court:* I think, in view of what our court have held in this class of cases, there will be an order entered giving you until the first day of next term of this court to have this matter passed upon by the Supreme Court; in the meantime, the respondent will remain upon the same recognizance for his appearance here until the first day of the next term of this court."

These instructions really made the verdict that of the court, and not of the jury, and compel a reversal of the conviction.   *People* v. *Doyle*, 160 Mich. 423 (125 N. W. 358).   In view of the important nature of the constitutional right invaded, we have felt it to be our duty to consider the point, although it is not raised by respondent.

The conviction is reversed, and a new trial ordered.

McALVAY, J., concurred with BLAIR, J.

STONE, J.   I concur in the result because of the directed verdict.

OSTRANDER, J., concurred with STONE, J.

HOOKER, J. I concur in the conclusion reached by Mr. Justice BLAIR upon the ground that, in directing the clerk to enter a verdict without giving the jury an opportunity to retire, the learned circuit judge gave the jury no opportunity to consider the case and disobey the instruction. The case of *People* v. *Collison*, 85 Mich. 105 (48 N. W. 292), is a case directly in point, and established the rule in this State that, in a case of misdemeanor, a party has a right to expect, if not to ask, a jury to disobey the instructions of the court to find a verdict of guilty, and that the trial court must give the jury the opportunity of doing so, though we have held that a defendant was not entitled to an instruction that they might disobey the instruction of the court to find a verdict of guilty, in the case of a misdemeanor. See *People* v. *Gardner*, 143 Mich. 116, 117 (106 N. W. 541). The *Collison Case* has been followed since. See *People* v. *North*, 153 Mich. 616 (117 N. W. 63).

I am not convinced that, where several persons send one of their number to purchase beer at a city where the purchase is lawful, and it is received by them via an express company, the one who purchased becomes liable for furnishing to one of their number, who drinks more than his proportionate share, as measured by the cost of the beer and their several contributions to the fund expended for the beer; nor am I sure that the evidence warrants the conclusion that one or more did so. The beer being owned in common, each had a right to help himself to his share, and another would not be liable as a furnisher of beer merely because one took more than he paid for. Apparently, my Brother BLAIR's opinion rests upon the expectation of the parties that this beer, paid for and owned jointly, would or might not be accurately divided—a proposition that I doubt. On the other hand, I am not sure that I would withhold my assent to the doctrine that one who causes beer to be shipped to himself, or himself and others, with the understanding with his fellows that it is to be divided in proportion to their respective contri-

butions or to be used in common, might be guilty of unlawfully furnishing beer, if the beer was so delivered and shared by himself and others.     I am unable to distinguish such a case from *People* v. *Lapham* 162 Mich. 394 (127 N. W. 366).   Such would seem to be a clear case of furnishing, wherever he might get the beer.

I think, also, that such act is not within the decision in the case of *People* v. *Converse,* 157 Mich. 30 (121 N. W. 475).   That case holds that the shipment by express from a county in which the selling of beer is lawful, to a purchaser residing in a county where it is prohibited, and the delivery there by the agent of the express company in the due course of business, does not make such express agent the keeper of a place where liquor is given away and furnished, or of unlawfully furnishing the same, which were the charges upon which the defendant was tried.   It does not hold that a private citizen living in a "wet" county, may by agreement go and procure liquor, in his own county, or anywhere else, and bring it or have it brought into the "dry" county, and deliver or cause it to be delivered therein to another and not be guilty of "furnishing" within the local-option act.   The *Converse Case* protects the agent of the express company, but it in no way sustains the claim that a party procuring and delivering liquor personally or in any other way within the dry county may escape the law against furnishing because he does it at the request of or under employment by the person for whom it is procured, and therefore was an agent. An agent may violate the law against furnishing as well as another, in my judgment.   The acts done in the "dry" county constitute the breach of the law.   The case holds that the law, being penal, cannot be extended to the act of the express company and its agent in the course of business.   This follows the rule requiring strict construction of penal statutes.

The conviction should be set aside, and a new trial ordered.