PEOPLE *v.* C. KERN BREWING CO.

1. INTOXICATING LIQUORS — SALES — CRIMINAL LAW — STATUTES — LOCAL OPTION.

The sale of intoxicating liquors on the order of a customer sent by mail from a county in which prohibition is in force to a county in which the traffic is legal, the goods to be sent by express, C. O. D., is lawful, and the contract is executed in the place where the order is received.[1]

2. SAME—DELIVERY TO CARRIER—CONSTITUTIONAL LAW.

In so far as Act No. 107, Pub. Acts 1909, may have attempted to change the rule by amending the local-option law so as to constitute a mere delivery to the carrier of such liquors to be forwarded C. O. D. a violation of the statute, it is unconstitutional, since the proposed amendment would not be germane to the title of the law.

3. SAME.

And the conviction of a brewing company and its officers for shipping C. O. D. intoxicating liquors from a county in which such sale was lawful to a county in which the local-option law was in force, is unwarranted.

Exceptions before sentence from Sanilac; Beach, J. Submitted April 20, 1911. (Docket No. 117.) Decided June 2, 1911.

The C. Kern Brewing Company, Christian Kern, Otto Kern, and Julius Kern were convicted of violating the local-option law. Reversed, and respondents discharged.

*H. O. Babcock,* Prosecuting Attorney, for the people.

*John B. McIlwain,* for respondents.

BLAIR, J. Respondents appeal from a conviction under section 36 of Act No. 107 of the Public Acts of 1909, which section reads as follows:

---

[1]As to when and where title passes on C. O. D. sale of intoxicating liquor, see notes in 2 L. R. A. (N. S.) 383; 24 L. R. A. (N. S.) 143.

"All shipments of any of the liquors referred to in section one of this act from any point within the State consigned to any point within any county wherein the provisions of this act are in operation to be paid for on delivery, commonly called C. O. D. shipments, shall be held to be sales made at the place of destination in violation of the provisions of this act."

The local-option law of this State went into force in Sanilac county May 1, 1909. The section of the law upon which the complaint is founded was not adopted by the legislature until later, and approved by the governor May 19, 1909. On October 23, 1909, a letter was received by the C. Kern Brewing Company reading as follows:

> "Lexington, Mich.,
> "Oct. 20th.
>
> "Dear Sir:
> "Will you send me one case of pints to Croswell? Send it so I can get it Saturday night. Send Cream of Michigan. I do not know how much to send.
> "Send your bill with it and I will pay it in Croswell, and oblige,
> "William Dunsmore,
> "Lexington, Mich."

William Dunsmore was a farmer living between Croswell and Lexington. He testified:

"Q. For what purpose did you desire the beer?
"A. Myself.
"Q. Was it for the purpose of selling or giving away in violation of the statute?
"A. No, sir; it was for myself.
"Q. Did you do it on your own motion.
"A. Yes, sir.
"Q. Did any one on behalf of the Kern Brewing Company ask you to do that kind of thing?
"A. No."

The shipping clerk then shipped by express a case of 24 pints of beer C. O. D to William Dunsmore, Croswell, and the instructions were to collect $2.20 from Dunsmore on delivery thereof. The case of beer arrived at Croswell on the evening of October 25th. It was shipped by the

C. Kern Brewing Company. The express agent at Croswell on receipt of the case of beer laid it aside that evening, intending to return it the next morning. Mr. Flower, the agent, testified:

"It arrived at 5:18 p. m., October 25th. I carried it into the office and advised my clerks not to deliver it to any person under any circumstances without referring the matter to me first. This was done because we have instructions not to deliver shipments of liquor which are billed C. O. D. The instructions came from the express company. * * * I calculated to send it back to Port Huron on the first train. * * * The first train was 9:01 a. m. the morning of the 26th.

"*Q.* What did you actually do in the way of sending it back to Port Huron?

"*A.* Put the shipment out, and wrote the agent in Port Huron a letter advising him I was returning it on that train, and my reasons for doing so."

His letter to the Port Huron agent reads as follows:

"CROSWELL, MICH., Oct. 26, 1909.
"Mr. S. T. PERCY, Agent,
          "Port Huron, Mich.

" *Dear Sir:* Port Huron, Mich., to Croswell, Mich., W. B. 173-1, Oct. 25, covers one case beer C. O. D., $2.20 for Wm. Dunsmore.

"I do not dare deliver these goods, am returning them to you on No. two this a. m. Mr. Mueller advised me not to deliver any of these goods C. O. D., but to return them, I have returned this on same bill. You can cancel the W. B. and make flat bill if you desire.

                              "Yours truly,
                         "P. F. FLOWER, Agent."

Witness further testified:

"I wrote that letter about 8:30 standard time. I had then the goods arranged to be returned. Between the time I got the box ready for shipment and the time the train arrived, a deputy sheriff came in and took the box away. He came in about 8:40 with the papers, a search warrant. And I was unable to return the goods to Port Huron.

" *Q.* Would you, under any circumstances, have delivered those goods to the consignee?

"*A.* Not upon the C. O. D. bill. When the officer took the goods away, I showed him the letter I had written returning the goods."

The circuit judge instructed the jury, among other things, as follows:

"There is another very close question on the construction of this section, as to whether a shipment, the mere shipment, C. O. D., is intended by the section to be treated as a sale, or whether the other elements of a sale, as we ordinarily understand them, must be shown. * * * I am inclined to think that the terms of the law were intended to prohibit the shipping C. O. D., and in its terms the mere shipment of goods C. O. D., delivered to the express company, is to be treated as a sale. Any other construction of it would simply nullify the object of the statute."

In our opinion this was an erroneous interpretation of the section. Independent of the statute, by the weight of authority the sale in question was made at Port Huron and was a lawful sale. *People* v. *Converse*, 157 Mich. 29 (121 N. W. 475); 17 Am. & Eng. Enc. Law (2d Ed.), p. 300; Benjamin on Sales, p. 86; Black on Intoxicating Liquors, § 207; *Keller* v. *State* (Tex. Cr. App.), 87 S. W. 669 (1 L. R. A. [N. S.] 489), and cases cited; *State* v. *Rosenberger*, 212 Mo. 648 (111 S. W. 509, 20 L. R. A. [N. S.] 284, 126 Am. St. Rep. 580); 23 Cyc. p. 185k; *American Express Co.* v. *Iowa*, 196 U. S. 133 (25 Sup. Ct. 182).

Assuming this to be the view taken by the legislature, its intention would appear to have been to change by statutory enactment the effect of a delivery to the carrier as theretofore determined by a majority of the courts, and introduce in place thereof the rule adopted by other courts that the sale was consummated before the shipment was delivered to the consignee at the point of destination.

To hold that the legislature intended to make a mere delivery to the express company, in a county where the sale was lawful, of a parcel consigned C. O. D. a violation of

the statute, would involve the holding that, if the parcel was destroyed before passing the boundaries of the shipper's county or the shipment was countermanded, the shipper would still be guilty of the offense. Such an amendment would not be germane to the title of the local-option law.

The prohibitive features of the act are limited by the title to the manufacture and traffic in intoxicating liquors within the territorial limits of the county where prohibition is adopted. *People* v. *Peterson*, 156 Mich. 235 (120 N. W. 570, 21 L. R. A. [N. S.] 134); *People* v. *Myers*, 161 Mich. 40 (125 N. W. 701).

Section 1 of the act provides:

"The people of the State of Michigan enact, that it shall be unlawful for any person, directly or indirectly, himself or by his clerk, agent or employé, to manufacture, sell, keep for sale, give away or furnish any vinous, malt, brewed, fermented, spirituous or intoxicating liquors, or any mixed liquor or beverage, any part of which is intoxicating, or keep a saloon or any other place where any such liquors are manufactured, sold, stored for sale, given away or furnished, *in any county of this State* on and after the first day of May, next following *after the adoption by the board of supervisors of such county of* a resolution prohibiting the same," etc.

The sales referred to in section 1 are actual sales within the county, whereby the title to and possession of the liquor itself actually pass to the purchaser. Under the provisions of section 36, in the case of C. O. D. shipments made outside of the local-option county, the title and property in the liquor remain throughout its transportation in the seller, and the person ordering the same acquires no interest therein until actual delivery to him, whereupon the transaction becomes a sale "made at the place of destination."

To interpret this section as rendering acts performed entirely outside of the local-option county as criminal, without reference to any act within the county, would, in

our opinion, render the section obnoxious to the provisions of article 5, § 21, of the Constitution (1909).

It results, therefore, that the conviction must be reversed, and the respondents discharged.

MOORE, McALVAY, BROOKE, and STONE, JJ., concurred.