PEOPLE v. TART.

INTOXICATING LIQUORS—LOCAL OPTION—PRINCIPAL AND AGENT—
    FURNISHING LIQUOR—STATUTES.

> One who takes money of another living in a county that has adoped prohibition, and in good faith purchases with it, in a county where intoxicating liquor may be lawfully sold, a bottle of whisky, which he delivers to the other in the county of his residence, does not violate 2 Comp. Laws, § 5412 et seq.[1]

Error to Oceana; Sessions, J., presiding. Submitted January 18, 1912. (Docket No. 151.) Decided March 30, 1912.

Fred Tart was convicted of violating the local-option law. Reversed and respondent discharged.

*Franz C. Kuhn*, Attorney General, and *F. E. Wetmore*, Prosecuting Attorney, for the people.

*Rufus F. Skeels*, for respondent.

[1] Is one who obtains liquor for and delivers it to another, using the latter's money, guilty of selling the same, see notes in 24 L. R. A. (N. S.) 268; 28 L. R. A. (N. S.) 334.

BROOKE, J. The respondent was convicted of the violation of the local-option law. He has brought the case here by writ of error.

The charge in the information is that respondent, at the township of Golden, in Oceana county, did then and there sell, give away, and furnish to one William Mathews a certain quantity of malt, brewed, spirituous, and intoxicating liquors, to wit, one quart of whisky, etc., contrary to the provisions of section 5412, 2 Comp. Laws.

The judge charged the jury:

"It is the claim of the people in this case that Mr. Tart and Mr. Mathews were employed upon the same farm in the township of Golden, in this county, at the time, and that Mr. Tart went to Muskegon on the 4th day of last July to spend the day; that prior to his going Mr. Mathews gave him $1 and requested him to purchase a dollar's worth of whisky for him in Muskegon and bring it back to him. It is the claim of the people that Mr. Tart took Mr. Mathews' money and purchased a quart of whisky in Muskegon county, and upon his return on the evening of the 4th day of July delivered that quart bottle of whisky to Mr. Mathews; and it is the claim of the people that that constitutes a violation of the local-option law, so called, which, it is conceded, was in force in this county at that time. As a matter of law, gentlemen, you are instructed that if Mr. Tart took Mr. Mathews' money and, acting for him, purchased a quart of whisky in the county of Muskegon and brought it to Mr. Mathews and delivered it to him in this county, such an act constituted a furnishing of intoxicating liquor within the law, and, if you find that to be the fact, it will be your duty to convict this respondent and find him guilty. One matter has been called to my attention, gentlemen. The place where the liquor was purchased by Mr. Tart is of no materiality. The crucial question is whether or not he delivered the liquor, under the circumstances, within this county to Mr. Mathews. It wouldn't make any difference whether he bought it in Muskegon county or somewhere else, so far as that part of it is concerned. You may retire, gentlemen."

The foregoing excerpt from the charge perhaps sufficiently indicates the character of the act which the court

held to be a violation of law. It should, however, be noted that respondent, who was about to go to Muskegon, was asked by Mathews as an accommodation to him to take $1 of his money and purchase a bottle of whisky for him in Muskegon, and bring it back to him in Oceana county. Respondent had no interest in any portion of the liquor purchased for Mathews with the money given him by Mathews for that purpose

The question presented is a very simple one. Is an agent, who takes the money of one living in a "local-option" county, and with it purchases liquor in a county where it may be legally sold, which he delivers to his principal in the "local-option" county, guilty of any offense under the so-called "local-option" law? It is clear that Mathews himself might have gone to Muskegon, bought his bottle of whisky, and carried it back into Oceana county. It is equally clear that a resident of a "local-option" county may order and pay for intoxicating liquors outside his own county and have them shipped to him by express or otherwise. *People v. Converse,* 157 Mich. 32 (121 N. W. 475).

The act of respondent in this case cannot be distinguished upon principle from that of a common carrier. He neither gave, sold, nor furnished the liquor in Oceana county within the meaning of the act. This case is to be distinguished from the case of *People v. Curry,* 163 Mich. 181 (128 N. W. 213, 30 L. R. A. [N. S.] 892), where the intoxicating liquor was purchased in bulk from a contributed fund, each contributor drinking as much and as often as he chose from the common stock. Here Mathews had an individual and exclusive property in the bottle of whisky which his money had paid for and which was delivered to him. Had there been any question, under the testimony, of the good faith of respondent in performing the act of agency with no interest in the transaction except to accommodate Mathews, that question should have been submitted to the jury under our former decis-

ions.  See *People* v. *Hancock,* 166 Mich. 654 (132 N. W. 443).  A verdict of acquittal should have been directed as requested by respondent.

The judgment is reversed, and respondent discharged.

MOORE, C. J., and STEERE, MCALVAY, BLAIR, STONE, and OSTRANDER, JJ., concurred.  BIRD, J., did not sit.