PEOPLE *v.* DRIVER.

1. INTOXICATING LIQUORS—SALES—CRIMINAL LAW.
    On the theory that a contract is executed where the order for goods is received and where the sale can be lawfully made, it is not a violation of the local-option law to order beer from another State, to be shipped into a county in which prohibition is in force.

2. SAME—PRINCIPAL AND AGENT—CARRIER.
    And one acting as agent for another may include with a personal order an order for him, advancing the purchase money and transportation charges, to be repaid on delivery of the liquor, provided the purchaser acting as agent has no interest in the liquor other than that of a carrier.[1]

Exceptions before sentence from Ingham; Collingwood, J. Submitted November 14, 1912. (Docket No. 137.) Decided March 20, 1913.

Byron Driver was convicted of violating the local-option law. Reversed.

*Roger I. Wykes*, Attorney General, *Charles H. Hayden*, Prosecuting Attorney, and *William C. Brown*, Assistant Prosecuting Attorney, for the people.

*Samuel L. Kilbourne*, for respondent.

BIRD, J. The respondent was convicted in the Ingham circuit court for selling, giving, and furnishing lager beer to three persons, Weaver, Watkins, and Hasbrook, in violation of the so-called local-option law.

_____

[1] Whether one who obtains liquor for and delivers it to another, using the latter's money, is guilty of selling the same, see notes in 24 L. R. A. (N. S.) 268; 28 L. R. A. (N. S.) 334.

Effect of participating in purchase and division of quantity of liquor to render one guilty of an unlawful sale, see note in 22 L. R. A. (N. S.) 560.

The record discloses that the respondent is a farmer, and that in August, 1911, he had a route over which he passed every morning to gather milk.   On the morning of August 7th, while making his daily trip, he was halted by his neighbor Weaver, who stated that he understood that respondent was going to send for some beer, and requested that he order two cases for him.   Respondent consented to do so, but informed him that the money would have to accompany the order.   Weaver replied that he did not have the money with him, but would hand it to him later if he would advance it.   When respondent reached the Okemos post office, he secured a money order, and inclosed it with an order for three cases of beer to the Buckeye Brewing Company, at Toledo.   A few days thereafter he saw Weaver, and advised him that his beer was at the railway station, and to go and get it.   Weaver then requested respondent to take it to his own home and place it on the east porch, and he would come and get it. Respondent paid the freight and took the beer to his home, as requested.   Subsequently Weaver repaid the money which respondent advanced for him, and took away one case of the beer.   Afterward Watkins and Hasbrook came and informed respondent that they were in partnership with Weaver as to the beer, and each took away eight bottles.   Later Weaver came and took away the balance of it.

It was the claim of respondent throughout the trial that he simply acted as an agent for Weaver in obtaining the beer; that when the order was accepted by the brewing company, and delivery of the beer was made to the railway company in Toledo, the title to the two cases passed to Weaver, and that he had no interest in the beer other than to accommodate his neighbor.   The entire defense of respondent was made along these lines, and his counsel endeavored by appropriate requests to get his case submitted to the jury upon this theory.   The trial court refused the requests, and upon his own motion charged the jury upon this phase of the case that:

" Now, gentlemen, I charge you that if you find beyond a reasonable doubt that Mr. Driver took George Weaver's order for beer, and whether the money was paid then or afterwards makes no difference, and that Byron Driver ordered this beer from the brewing company in Toledo, using his own name, and that the beer was shipped over the line of the railroad to Byron Driver in the name of Mr. Driver, and that Mr. Driver afterwards received this beer from the railroad company, signing his name to the receipt, and that either then and there or afterwards at his home furnished the beer to George Weaver or Ray Watkins or Clifford Hasbrook or any of them, he was the agent of George Weaver—that is, he was the active intentional means of supplying this beer to George Weaver or Ray Watkins or Clifford Hasbrook or any of them—and then, in that case, he should be deemed to be the furnisher of the beer, and did furnish it against the terms of the statute without regard to the amount paid or where paid. If you find these facts beyond a reasonable doubt, Mr. Driver is guilty, and you must return that verdict."

The course adopted by the respondent in ordering beer for himself was not in violation of the local-option law. *People* v. *Brewing Co.*, 166 Mich. 292 (131 N. W. 557, Ann. Cas. 1912D, 981). This is on the theory that the contract is executed where the order is received, and where the sale may be lawfully made. It has been held by this court that one may go into another county, purchase liquor, and bring it into a local-option county for another without incurring the penalty of the law. *People* v. *Tart*, 169 Mich. 586 (135 N. W. 307).

Had respondent driven to Toledo and purchased the beer, and brought it home in his wagon and delivered it to Weaver, we would have the exact legal situation that was presented by *Tart's Case*. If one may bring beer into a local-option county for another without violating the statute, it does not occur to us why he may not send for it for another, providing, of course, that it is done in good faith, and with no interest in the beer other than a desire to serve his neighbor or as a carrier. If the testimony offered on behalf of the respondent was true, the

title to the two cases of beer passed to Weaver in the city of Toledo. This being true, the beer belonged to Weaver, and the respondent could not be guilty under the statute for furnishing to him his own beer. The statute evidently contemplates in the use of the words "sell, give away, or furnish" that the offending party shall be the owner or have some interest in the liquor other than that of a carrier. We think the trial court was in error in his instruction as to what would amount to a violation of the statute in furnishing liquors to another, and for this reason the case must be reversed.

Some of the testimony bearing upon the agency and good faith of respondent was in conflict, and his guilt was, therefore, a question for the jury to determine under all the testimony.

The conviction will be set aside, and a new trial granted.

STEERE, C. J., and MOORE, McALVAY, BROOKE, STONE, and OSTRANDER, JJ., concurred. KUHN, J., did not sit.