HICKEY *v.* SHELLENBARGER.

1. MALICIOUS PROSECUTION—ELEMENTS.

To entitle a plaintiff to recover for malicious prosecution, three things must concur and be established by a preponderance of the evidence: that the prosecution was begun and came to a legal termination in favor of the plaintiff, that the defendant instituted it without probable cause, and that in so doing he was actuated by malicious motives.

2. SAME—MALICE—TRIAL.

If there is any evidence in the case tending to prove malice, the question is for the jury to determine whether a malicious motive existed: it may be proved by direct evidence or it may be inferred from circumstances. And where there was evidence of acts of violence committed by the defendant and expressions of ill will, with facts and circumstances in the dealings of the parties from which malice might be inferred, the issue became one of fact for the jury.

3. SAME—INTOXICATING LIQUORS—PROBABLE CAUSE.

Where the defendant made a complaint before a justice of the peace, charging the plaintiff with selling him a quart of whisky and the plaintiff denied that he sold or furnished a bottle of whisky at the time and place stated, *i. e.*, in a county that had adopted prohibition, defendant's testimony that plaintiff did sell the bottle of whisky as charged, furnished evidence of probable cause for making complaint, but if such testimony was untrue as charged by the plaintiff and as shown by his proofs, there was want of probable cause for the prosecution, and plaintiff's evidence made out a *prima facie* case.

4. SAME—HEARSAY EVIDENCE—PRELIMINARY EXAMINATION—WITNESSES.

Evidence offered to show what the witnesses stated in their examination before the justice of the peace was correctly excluded, the testimony was inadmissible to establish the contention that the discharge of plaintiff from custody was erroneous and a miscarriage of justice.

5. SAME—EVIDENCE—CRIMINAL LAW—OTHER OFFENSES.

Proof of other offenses similar to the one with which defendant charged the plaintiff, who was taken into custody for the offense complained of, is not competent, in an action for malicious prosecution, to prove the plaintiff's guilt of the offense for which he was arrested.

6. SAME.

Nor did the court err in charging the jury that evidence of the plaintiff's discharge from arrest was admitted solely to prove the termination of the criminal proceeding and could not be considered as proof of want of probable cause.

Error to Shiawassee; Miner, J. Submitted April 9, 1914. (Docket No. 19.) Decided June 1, 1914.

Case by Otto Hickey against Henry Shellenbarger for malicious prosecution. Judgment for plaintiff. Defendant brings error. Affirmed.

*Chapman, McNamara & Matthews,* for appellant.

*Roy M. Chrouch (George E. Pardee,* of counsel), for appellee.

STEERE, J. This is an action for malicious prosecution involving a judgment against defendant for six cents damages and equal costs, brought here by defendant for review on a writ of error for the purpose, as we are informed, of maintaining his right, as a citizen willing to vindicate the law and assist the suppression of crime in discharge of his duty to society, to protection from annoying litigation resulting from such public service.

Plaintiff and defendant were formerly friends and copartners in the business of spraying orchards in Shiawassee county, but differences arose between them which resulted in their ceasing to prosecute the business after some time in February, 1912, though they were unable at that time to satisfactorily adjust their partnership affairs and fully dissolve such rela-

tions, in consequence of which unfriendly feeling developed. While their relations were friendly, Hickey procured some whisky, of a brand known as the "Golden Gift," by express, from Covington, Ky., for medical purposes, as then assumed and said, in the consumption of which both participated, according to the demands of their health or inclinations. The number of times it was procured and the circumstances under which defendant participated and obtained his portion are questions upon which they are not in harmony. Defendant claims it was procured by plaintiff on three different occasions; plaintiff admitted that it was ordered once by him, but claimed it was for both of them acting in co-operation, either in January or February, 1912, when the weather was very cold. His account of the transaction and his agency is as follows:

"It was 14 months before the warrant was sworn out. I said to Shellenbarger, 'I believe I am sick, coming down with the grip;' and I says, 'I have got to do something for this or I won't be able to go any further;' so I says, 'I believe I will send and get a gallon of whisky and see if I can't break up my cold.' Mr. Shellenbarger says to me, he says, 'I believe I have got the same thing;' and he says, 'While you are sending, get some for me.' I says: 'Mr. Shellenbarger, I am going to get a gallon, and I don't need it all. If you want some and you order it, why I will get it for you.' So he asked me what it was, and I told him it was $3.20 per gallon, or five quarts; there was one quart thrown in free. I told him I would figure in that quart just the same as I paid for it.' He said 'You send and get one quart bottle for me,' and offered to pay me. It was so awful cold my hands were frozen stiff. My coat was buttoned up. And I says to Shellenbarger, 'Never mind, I will advance the money for you, and you can pay me some other time.' He says, 'Very well.'"

That the "Golden Gift" was procured from Kentucky and possessed special medicinal properties is

said to bear some relation to the fact that Shiawassee county was under the local option law, so called, and the sale or giving away of intoxicating liquors in that territory was prohibited.

After the estrangement of these parties and their inability to settle their partnership affairs became acute, it is claimed by Hickey that Shellenbarger, who was an athlete and had manifested his prowess while on the police force in the city of Toledo, commenced a course of intimidation towards the former both by physical demonstrations and by threatening to make him trouble on account of his having procured and furnished liquor to others in violation of law. Different witnesses testified to such threats and physical violence by Shellenbarger, at one time reaching a point where he grabbed Hickey by the throat and choked him. A settlement of their business matters was reached about a year after they ceased doing business, under circumstances which did not altogether relieve their strained relations.

In the fall of 1912 Shellenbarger became a candidate for sheriff of Shiawassee county on the Progressive ticket, and Hickey does not appear to have been favorably disposed to his candidacy. During the campaign each insinuated that the other had been guilty of violating the local option law, and threats of prosecution were made in that connection.

On February 27, 1913, Shellenbarger made an affidavit before Gustav F. Friegel, a justice of the peace, charging Hickey with selling deponent one quart of whisky in the city of Owosso on the 21st of April, 1912, receiving therefor the sum of 60 cents. Upon this a complaint was sworn to by a deputy sheriff, and a warrant issued charging Hickey with violation of the local option law. An examination had before said justice resulted in the discharge of Hickey; the justice finding that there was no probable cause to suspect

him guilty of the commission of the offense charged, on the date stated. Following Hickey's discharge he commenced this action against Shellenbarger for malicious prosecution. The case was tried before a jury in the circuit court of Shiawassee county, resulting in a verdict for plaintiff and assessment of damages in the sum of six cents. The various objections to the validity of this judgment propounded in defendant's assignments of error, and discussed, involve the claims that a verdict should have been directed for defendant because plaintiff failed to prove malice and want of probable cause, and admitted that he himself was guilty of violating the local option law; that defendant "acted in good faith to bring a man he believed guilty to justice;" that various errors were made by the court in its charge and in the admission and rejection of evidence.

To entitle plaintiff to recover in this action for malicious prosecution, these three things must concur and be established by a preponderance of the evidence: That the prosecution was begun and came to a legal termination in plaintiff's favor; that defendant instituted it without probable cause; and that in doing so he was actuated by malicious motives.

It is undisputed that the prosecution was instituted on the strength of an affidavit made by defendant, and that it has ended favorably to plaintiff, resulting in his discharge.

The question of malice calls for little consideration. It is always exclusively for the jury when there is any evidence in the case tending to establish it.

"It may be proved by direct evidence, or it may be inferred from circumstances." *Hamilton* v. *Smith,* 39 Mich. 223.

The record in this case contains both direct and circumstantial evidence, consisting of acts of violence, threats, and expressions of ill will, with facts and cir-

cumstances in the dealings and relations of the parties from which malice might be inferred. Furthermore, in this record the testimony of the contending parties and their relations to the facts out of which the alleged malicious prosecution arose bring both the questions of malice and want of probable cause to a simplicity of inquiry which relieves from the necessity of resort to fine distinctions and detailed definitions often deemed essential to an understanding of their import. Both litigants claim and testify to first knowledge of the essential fact. No question of misinformation or misunderstanding is involved. Both of them have personal, positive, and direct knowledge of the absolute truth. Plaintiff testified he did not sell or furnish defendant a bottle of whisky at the time and place stated in the affidavit. His testimony makes out a *prima facie* case and, if true, establishes want of probable cause for the prosecution and the inference that it was begun maliciously, in bad faith. Defendant swore in his affidavit and testified on the trial that plaintiff did sell him a bottle of whisky at the time and place charged. If true, there was not only probable cause but positive and conclusive cause for the prosecution, and the question of malice is eliminated. If untrue, there was no cause, probable or possible. Whether he "acted in good faith to bring a man he believed guilty to justice" rests upon the same contingency. All citation of authorities and subtlety of reasoning circle back to these elemental propositions. According as the jury determined the truth or falsity of the direct and positive testimony of these opposing litigants, so the questions of probable cause and malice inevitably went. Evidence of their relations with each other and all facts and circumstances bearing on their veracity, or in any way legitimately tending to throw light on the transaction and refute or substantiate the testimony of either, was

competent, and full latitude appears to have been given by the court in that respect, to both parties.

Complaint is made that it was not, in the particular that the court sustained an objection to admission of the testimony of certain witnesses taken at the examination before the magistrate in the criminal prosecution on account of which this action was brought; counsel for defendant stating its purpose was to show that plaintiff's discharge was wrongful and a miscarriage of justice. No claim was made that any of the witnesses at that examination were dead or for other reasons not available. It was undisputed that there was an affidavit by defendant, a complaint, warrant, and arrest of complainant, followed by an examination before the magistrate and discharge of plaintiff, legally terminating the case. The prosecution did not end on technical grounds but after examination of witnesses and an adjudication by the court. The details and reasons of the court for such decision were immaterial. The court rightly held that the discharge of plaintiff was only admissible and material to show the prosecution was terminated, and what evidence the magistrate had before him to govern his official action, or what he may have thought, was immaterial. Defendant was permitted to go fully into all the original facts and circumstances bearing on plaintiff's guilt and introduce whatever testimony he desired as to his knowledge, motives, the occasion for and circumstances of his making the affidavit.

It is urged that the circumstances under which the affidavit was made by defendant indicate that he acted in good faith and without malice, because he is shown to have made the affidavit at the solicitation of one Goodwin, who testified that he was looking after "bootlegging" in an effort to bring offenders in that particular to justice, and that a deputy sheriff, who heard defendant knew of certain facts implicating

plaintiff, interrogated and solicited him to make complaint. It appears undisputed that matters reached a stage where it was understood by Goodwin, the officer, and others that defendant had made statements that plaintiff had violated the local option law to defendant's own knowledge on at least three different occasions, and when they interviewed him he asserted such to be the case. He accompanied them to the magistrate and there said he was willing to make an affidavit, but did not care to make complaint, and it is claimed that the officers selected, from the three offenses of which defendant told, the one for which the complaint was made, and therefore, as a matter of law, defendant cannot be held responsible for such selection. This is not borne out by the facts proven. The magistrate testified that when these matters were brought to his attention, and he was solicited by Mr. Goodwin to issue a warrant, he stated that it would be necessary for some evidence to be produced which would justify issuing the same; that later defendant came before him, accompanied by Mr. Goodwin and an officer, and stated that he was willing to make an affidavit, whereupon the magistrate prepared an affidavit, asking defendant particularly for the data from which to make it and the date on which he claimed the offense was committed; that he drew up the affidavit according to such statements made by defendant, and defendant signed and swore to it. This affidavit was the cause and foundation of the prosecution. He is not shown to have made affidavit to any other offense or manifested his willingness to do so.

The claim that a verdict should have been directed in defendant's favor for the reason that plaintiff admitted facts which show he is guilty of violating the local option law is not tenable. His testimony, on cross-examination, which it is claimed was such an admission, related to an entirely distinct transaction

from that involved here. At the worst, it was a different offense, at another time and place. Counsel devote much space in their briefs to the question of whether the facts plaintiff admitted would constitute a violation of the liquor law, under *People* v. *Driver*, 174 Mich. 214 (140 N. W. 515). This we regard as immaterial. The evidence was admitted. Defendant had the benefit of it before the jury. It may be considered admissible as bearing upon plaintiff's character and veracity and, if known to him, defendant's good faith; but proof of other similar offenses is not competent to directly prove guilt of the offense charged. 26 Cyc. p. 94; *Patterson* v. *Garlock*, 39 Mich. 447; *Wilson* v. *Bowen*, 64 Mich. 133 (31 N. W. 81).

Defendant requested the court to "instruct the jury that the discharge at the examination is not evidence of probable cause." This the court did not give, and manifestly should not have given in the form presented, but did in effect, we think, instruct the jury that the discharge was not to be considered as evidence of want of probable cause, distinctly charging them that it was admitted solely for the purpose of proving the one essential fact that the prosecution was terminated in the discharge of defendant, and what the justice may have thought in so doing was not for the jury to consider, emphasizing at length the rule putting the burden of proof upon plaintiff to establish, by a preponderance of evidence, that defendant was not only actuated by malice but had no reasonable ground or probable cause to think plaintiff guilty, and that plaintiff could not recover "if he has not done that to the satisfaction of the jury, by a preponderance of the evidence." We think the charge of the court as an entirety was correct, and very clearly stated to the jury the principles of law involved, and under the law their duty in relation to

the issues of fact. As before suggested, the paramount problem for the jury was the veracity of the contending litigants. This they have solved in plaintiff's favor, to the extent of six cents. We are not impressed that the verdict is so against the overwhelming weight of evidence as to demand that it should be set aside for that reason.

No reversible error is found in the record, and the judgment is affirmed.

McALVAY, C. J., and BROOKE, KUHN, STONE, OS-TRANDER, BIRD, and MOORE, JJ., concurred.